McELROY, DEUTSCH & MULVANEY, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Plaintiff
(VER-4166)

RECEIVED
JAN 20 2004
AT 5:30 PM
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

ROYAL INSURANCE COMPANY
OF AMERICA,

                Plaintiff,

vs.

CADAPULT GRAPHIC SYSTEMS, INC. and
MEDIA SCIENCES, INC.,

                Defendants.

---

Civil Action No. 04-231 (JAP)

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Royal Insurance Company of America ("Royal"), by and through its undersigned attorneys, McELROY, DEUTSCH & MULVANEY, LLP, as and for its complaint against defendants, Cadapult Graphics Systems, Inc. ("Cadapult") and Media Sciences, Inc. ("Media"), alleges, as follows:

### INTRODUCTION

1. This is an action for declaratory relief brought by Royal against Cadapult and Media pursuant to 28 U.S.C. §2201 to settle questions concerning umbrella policies of liability insurance issued to Cadapult and whether or not the umbrella policies should be rescinded due to material misrepresentations of fact Cadapult made to Royal and, if not rescinded, whether the policies apply to claims against Media for losses allegedly arising out of defective solid ink sticks manufactured by Media.

2. Plaintiff seeks to have this Court declare umbrella policies P LA 45905 80000 and P LA 45905 80001 issued to Cadapult void from inception because Cadapult misrepresented that it had no subsidiary organizations, failed to identify Media as an entity to be insured, failed to identify Media as a manufacturer of solid ink sticks, failed to identify solid ink sticks as a product to be covered and, at renewal of the first umbrella policy expressly represented that Media had separate coverage and was not seeking coverage under any liability policy of insurance issued by Royal.

3. Plaintiff alternatively seeks, if the Court does not rescind the policy, to have this Court declare that Royal has no obligation to indemnify Media for the claims because Media did not provide timely notice of the claims and paid in excess of $4,000,000 in settlement of the claims without notice to Royal and without the consent of Royal preventing Royal from participating in the defense or settlement of those claims.

## THE PARTIES

4. Plaintiff Royal is an Illinois stock company engaged in the insurance business with its principal place of business located at 9300 Arrowpointe Boulevard, Charlotte, North Carolina, 28273-8135. Royal is authorized to transact business and has transacted business in New Jersey.

5. Upon information and belief, defendant Cadapult is a Delaware corporation with its principal place of business at 40 Boroline Road, Allendale, New Jersey 07401. Upon information and belief Cadapult is a re-seller of computer graphic products and services.

6. Upon information and belief, defendant Media is a New Jersey corporation with its principal place of business at 40 Boroline Road, Allendale, New Jersey 07401. Upon information and belief Media is in the business of manufacturing solid ink stick products.

7. Upon information and belief, Cadapult, on April 19, 2002, changed its name to Media Sciences International, Inc. Its state of incorporation and principal place of business did not change.

## JURISDICTION AND VENUE

8. This is an action based on diversity of citizenship under the provisions of 28 U.S.C. §1332(a).

9. This Court possesses subject matter jurisdiction under 28 U.S.C. §2201.

10. While the claims of plaintiff are not founded in federal law, this is an action between citizens of different states and the matter in controversy exceeds $75,000.

11. Venue in the United States District Court for the District of New Jersey is proper because both defendants' principal places of business are located at 40 Boroline Road, Allendale, New Jersey 07401 and the two umbrella policies at issue were brokered and issued in New Jersey, which is within this judicial district.

## FACTS

12. Media manufactured solid ink stick products. It distributed its products both in the United States and internationally.

13. Upon information and belief, solid ink sticks is a technology involved in color printing. As a printer is used, the printer melts sticks of solid ink into a printhead from where the ink is jetted.

14. On or about April, 2001, Media performed internal quality assurance testing of the solid ink sticks. That testing showed premature failures. At that time, Media ceased production of the solid ink sticks.

15.  Upon information and belief, an April, 2001 analysis of printheads showed that the ink stick failures resulted in an internal printhead screen becoming clogged.

16.  Upon information and belief, due to the solid ink stick chemistry, it broke down the sealant used in a printhead assembly resulting in ink leaks. The ink stick chemistry would also cause a build-up of ink in the printer causing paper jams and, in some cases, the inability to remove the paper tray. In addition to leaking, printheads might also start to lose jets or nozzles ultimately resulting in the complete loss of print from the solid ink stick colors.

17.  In May, 2001, Media changed the ink chemistry with respect to the acid number and, at the same time, changed another chemical, the plasticizer. In May, 2001, Media resumed production of the solid ink sticks.

18.  Media began receiving complaints from customers that printheads were leaking and failing at least as early as July, 2001.

19.  In September, 2001, Media conducted a telephonic recall of all Magenta and Yellow ink sticks. The September, 2001 recall was to some, but not all, customers and users of the solid ink sticks.

20.  The transcript of the telephonic recall reads as follows:

> The reason for my call today is to alert you to a potential issue regarding solid ink sticks. First, I want to assure you that if you or your customers experience any problems with the inks that we offer you are 100% covered. Our guaranty on solid ink is 100% satisfaction up to and including any damage that may occur resulting from our inks. With that in mind, our vendor has notified us that there is the potential for a problem with the ink in the 340/350/360, 840 and 850 printers that we think is serious enough to warrant the return and replacement of the ink. The problems shows itself as a failure of the ink jets. We believe the continued use of these subject inks will increase the likelihood that you or your customers would experience a problem. We think that you would agree that if we proactively address this situation we will minimize the effects. We will have replacement ink available to

> ship to you the week of 10/15. What we are suggesting is that you contact your customers to exchange their unused ink. To help you with your customers on this we are offering "rainbow packs" that you can give them in addition to the replacement ink. In order to compensate you for the trouble, we are sending additional free ink up to 10% of your purchases in the last two months.

21. Upon information and belief, on or about October 15, 2001, a test laboratory reported to Media that a chemical component of the solid ink sticks was incompatible with the sealant used in the printhead and that component was likely causing printhead failures.

22. Upon information and belief, additional raw material testing was again done in December, 2001, which showed that the printhead sealant could also be degraded by the plasticizer that was being used. Media again halted production of the solid ink sticks.

23. Upon information and belief, in January, 2002, another recall was initiated by Media, this time for all ink sticks.

24. At no time did Media conduct a written recall to its customers and users and it did not contact all customers and users concerning the recall.

25. A General Liability Notice of Occurrence/Claim dated October 5, 2001 was submitted by Media's insurance producer, Commercial National Insurance, to American Manufacturers Mutual Insurance Company ("AMM") concerning the solid ink stick claims. The description of the occurrence contained in the notice states the following:

> PRODUCT LIABILITY – A change in chemistry in insured's ink product is causing printers, in which ink has been used, to fail.

26. The General Liability Notice of Occurrence/Claim form dated October 5, 2001, states that the date of the occurrence is April 1, 2001.

27. AMM acknowledged receipt of the claim indicating that Media was insured by AMM policy 3MII 814 779-00.

28.     Upon information and belief, a dispute arose between Media and AMM regarding the claim. On February 8, 2002, AMM settled the claims for $1,000,000 and a Settlement Agreement and Release was entered into between Media and AMM for AMM policy 3MH 503 488-00 for the policy period January 1, 2000 to January 20, 2001 and policy 3MH 814 799-00 for the policy period January 20, 2001 to January 20, 2002.

29.     Media has primary general liability insurance under two AMM policies from July 1, 2000 to July 1, 2002, each with a $1,000,000 per occurrence policy limit.

30.     Neither AMM, Cadapult or Media advised Royal of the claims, payment of the claims or of the settlement between Media and AMM.

31.     In March, 2003, Cadapult, for the first time placed Royal on notice of claims against Media arising out of damages allegedly caused by defective ink stick products.

32.     By letter to Cadapult dated April 3, 2003, Royal acknowledged receipt of notice of claims and advised Cadapult that it was undertaking a coverage investigation subject to a complete reservation of rights.

33.     On or about April 16, 2003, Cadapult advised Royal that the total of the claims Media paid up to that date was $4,222,482.15. Media claims that it only seeks reimbursement for monies expended to replace damaged printheads, namely the cost of the printhead and labor.

34.     By letter dated January 19, 2004, Royal formally advised Media that it was denying any obligation to pay the solid ink stick claims.

## THE ROYAL UMBRELLA POLICIES

35.     Royal issued two Big Shield commercial catastrophe liability policies to Cadapult, Tartan Technical and BBG Technologies.

36. Royal issued an umbrella liability policy to Cadapult, Tartan Technical and BBG Technologies with the Policy No. P LA 4590580000 for the policy period July 1, 2000 to July 1, 2001. Media is not a named insured under this policy.

37. Royal issued an umbrella liability policy to Cadapult, Tartan Technical and BBG Technologies under Policy No. P LA 459058 0001 for the policy period July 1, 2001 to July 1, 2002. Media is not a named insured under this policy.

38. Both policies provide, in pertinent part and subject to the provisions, terms, conditions, exclusions and endorsements, as follows:

> I. INSURING AGREEMENT
>
> 1. We will pay on behalf of the insured those sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages to which this insurance applies because of:
>
> (a) "Bodily injury" or "property damage" which occurs during the policy period and is caused by an "occurrence"; or
>
> No loss will be covered if prior to the policy period, any insured listed under Section IV WHO IS AN INSURED and no employee authorized by you to give or receive notice of an "occurrence" or claim, knows that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
> "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Section IV WHO IS AN INSURED or any employee authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation,

change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Section IV WHO IS AN INSURED or any employee authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that the "bodily injury" or "property damage" has occurred or has begun to occur.

(b) "Personal and advertising injury" caused by an offense committed during the policy period.

The amount we will pay for damages is limited as described in Section VI LIMITS OF INSURANCE.

If we are prevented by law from paying damages on behalf of the insured, we will indemnify the insured for those sums in excess of the "retained limit" up to the applicable limit of insurance shown in the declarations.

39. Section IV, of the Royal policies, identifies who qualifies as an insured and states in pertinent part:

**IV. WHO IS AN INSURED**

1. If you are designated in the declarations as:

(a) An organization other than a partnership, joint venture, or limited liability company, you are an insured. Any organization over which you maintain ownership interest of more than 50% is also an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your

466657-1

8

    stockholders are also insureds, but only with respect to their liability as stockholders.

40. Section VIII, Conditions, contains the following pertinent language:

  6. Duties in the Event of "Occurrence", Offense, Claim or "Suit"

   (a) You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim or "suit". To the extent possible, notice should include:

    (i) How, when and where the "occurrence" or offense took place;

    (ii) The names and addresses of any injured persons and witnesses; and

    (iii) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   (b) Notice of an "occurrence", offense, or claim will be considered knowledge of the insured if reported to an individual Named insured, partner, executive officer or an employee designated by you to give us such a notice.

   (c) Your rights afforded under this policy shall not be prejudiced if you fail to give us notice of an "occurrence", offense or claim solely due to your reasonable and documented belief that the "occurrence", offense or claim is not covered under this policy.

   (d) If a claim is made or a "suit" is brought against any insured when such claim or "suit" is reasonably likely to involve this policy, you must:

    (i) Immediately record the specifics of the claim or "suit" and the date received; and

    (ii) Notify us as soon as practicable.

   (e) You and any other involved insureds must:

> (i) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> (ii) Authorize us to obtain records and other information;
>
> (iii) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>
> (iv) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of injury or damage to which this insurance may also apply.
>
> (f) No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

41. In the two applications of insurance for the two Royal umbrella policies, Cadapult specifically stated that it had no subsidiary organizations.

42. Upon information and belief, Media was at all relevant times a wholly-owned subsidiary of Cadapult.

43. In these two applications of insurance for the two Royal umbrella policies, Cadapult did not identify the AMM policies as underlying insurance.

44. In these two applications for the Royal umbrella policies, Cadapult failed to identify Media as a manufacturer of solid ink sticks and failed to identify solid ink sticks as a product to be covered.

45. At the time of renewal of policy P LA 459058 0000, Royal was advised that Media had separate coverage and was not seeking coverage under any general liability policy of insurance issued by Royal.

## FIRST CAUSE OF ACTION

### (Rescission)

46. Royal repeats and incorporates by reference the allegations of paragraphs 1 through 45 of the Complaint as though fully set forth herein.

47. Cadapult, in its initial application for insurance submitted to Royal, misrepresented facts that were material to the risk Royal was to assume with the intent to deceive Royal with respect to those facts. The material facts which Cadapult misrepresented included:

    a.    facts about Cadapult's subsidiaries; and

    b.    the nature and type of business to be insured.

48. Cadapult, in its second application for insurance submitted to Royal again misrepresented material facts with the intent to deceive Royal with respect to those facts. The material facts Cadapult misrepresented included:

    a.    facts about Cadapult's subsidiaries;

    b.    the nature and type of the business to be insured;

    c.    facts about Media not being an insured under the Royal policies; and

    d.    facts about Media having separate coverage with another insurer.

49. Royal relied to its detriment on Cadapult's numerous misrepresentations regarding the coverage sought as it would not have issued or renewed the coverage provided by the Royal umbrella policies.

50. At no time did Media or Cadapult apply for insurance coverage from Royal for Media for the umbrella policies at issue.

51. At not time did Media pay premium for the Royal umbrella policies issued to Cadapult.

466657-1

11

52. Royal will return all premiums with interest to restore the status *quo*.

53. Royal is entitled to rescind the umbrella policies and to treat those policies as void *ab initio*.

54. Royal is entitled to a declaration that Royal policies P LA 459058 0000 and P LA 459058 0001 are rescinded and void *ab initio*.

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

55. Royal repeats and incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. Even if Media is considered to be an insured under the Royal umbrella policies issued to Cadapult, there would be no coverage because Media and Cadapult materially breached conditions precedent to coverage.

57. Pursuant to the terms and conditions of the Royal umbrella policies, an insured is to notify Royal as soon as possible of an "occurrence" which may result in a claim. Media had such notice at least as early as April, 2001. Media did not place Royal on notice of the occurrence until March, 2003.

58. The claims at issue against Media were made against Media at least as early as July, 2001.

59. The terms and conditions of the Royal umbrella policies require that if a claim is made against any insured then Royal must be notified as soon as practicable and the insured must immediately send copies of any notices or demands to Royal and the insured must cooperate with Royal in the investigation or settlement of the claims.

60.  Neither Media nor Cadapult placed Royal on notice of any claims until March, 2003.

61.  Prior to providing Royal with notice of an "occurrence" or a claim against Media, Media settled and paid numerous claims in a total amount exceeding $4,000,000 without Royal's knowledge or consent.

62.  The Royal umbrella policies provide that no insured, except at its own cost, will voluntarily make a payment or assume any obligation or incur any expense without Royal's consent.

63.  Cadapult's and Media's failure to provide timely notice of an occurrence or claim, denied Royal the right, among other matters, to investigate the occurrences and claims, thereby causing appreciable prejudice to Royal.

64.  Cadapult's and Media's voluntary payment of claims without notice to and the consent of Royal, denied Royal the right, among other matters, to defend and settle the claims, if appropriate, thereby causing appreciable prejudice to Royal.

65.  Royal is entitled to a declaration that Royal has no obligation to indemnify Media with respect to the losses that are the subject of this suit because Media breached the notice condition precedent to coverage and the voluntary payment condition precedent to coverage of the Royal umbrella policies.

66.  Royal is entitled to a declaration that it should recover from Media any costs incurred, whether in whole or in part, to prosecute this Complaint for declaratory relief, including attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Royal respectfully requests judgment against the defendants as follows:

### First Cause of Action

Royal respectfully requests the following:

1. That this Court declare that Royal policies P LA 459058 0000 and P LA 459058 0001 are rescinded and that such policies are void *ab initio* by virtue of Cadapult's material misrepresentations;

2. Recovery by Royal from Cadapult and Media for costs of suit incurred, including attorneys' fees; and

3. Such other relief as the Court may deem just and proper.

### Second Cause of Action

Royal respectfully requests the following:

1. A declaration that certain terms and conditions precedent to coverage in the Royal policies were breached by Cadapult and Media;

2. A declaration that as a result of the breach of conditions precedent to coverage, Royal has no obligation to indemnify Media for the claims against Media for which it seeks payment;

3. Recovery by Royal for Cadapult and Media for costs of suit incurred; and

4. Such other relief as the Court may deem just and proper.

                                                McELROY, DEUTSCH & MULVANEY, LLP
                                                Attorneys for Plaintiff, Royal Insurance
                                                Company of America

                                          By: _____
                                                 Vincent E. Reilly (VER-4166)

DATED: January 20, 2004